IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| NATIN PAUL, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | A-24-CV-1271-DAE |
| | § | |
| JAN SOIFER and SHERIFF SALLY HERNANDEZ, | § § § | |
| | § | |
| Respondents. | § | |

## ORDER

Before the Court are Petitioner Natin Paul's Emergency Application for a Stay of the State Trial Court's Criminal Contempt Order (ECF No. 3), Respondent's response to the motion (ECF No. 8), and Petitioner's reply (ECF No. 17). Petitioner has also filed a Petition for Writ of Habeas Corpus. (ECF No. 1.) In his federal habeas petition, Petitioner argues Travis County District Judge Jan Soifer violated his Sixth and Fourteenth Amendment rights when she found him guilty of contempt of court and sentenced him to ten days in jail without conducting a separate sentencing hearing, thereby depriving Petitioner of his rights to the assistance of counsel, to physical presence, and to present mitigation. In his emergency application, Petitioner requests this Court stay the trial court's contempt order pending its decision on his federal habeas corpus petition. Because the Court concludes Petitioner's emergency application does not meet the standards set forth in *Nken v. Holder*, 556 U.S. 418 (2009), it is denied.

1

## I. Factual Background[1]

This matter arises out of ongoing litigation between Petitioner and the Roy F. and JoAnn Cole Mitte Foundation. Petitioner and his corporate entities were found joint and severally liable to the Mitte Foundation in the amount of $1,909,125.20. On June 10, 2022, the Mitte Foundation also secured injunctive relief requiring Petitioner to, among other things, report each transfer, conveyance, or dissipation "of assets in excess of $25,000 made over the course of the prior month, or, if applicable, that no such transfers … were made."

On September 2, 2022, the Mitte Foundation moved to show cause why Petitioner should not be held in civil contempt for disobeying the injunction, alleging Petitioner had violated the injunction by failing to file the required reports. On October 4, 2022, the trial court issued a show-cause order, ordering Petitioner to appear before the court on November 9, 2022, "to show cause why he should not be held in contempt of Court for disobedience of the Injunction."

Prior to the November 9 hearing, Petitioner filed sworn reports with the trial court stating he had not transferred, conveyed, or dissipated any assets in excess of $25,000. At the November 9 hearing, the Mitte Foundation questioned Petitioner about a $100,000 transfer they alleged he made to a professional basketball player on June 22, 2022, which was within the injunction period. At the conclusion of the hearing, the Mitte Foundation argued Petitioner should be held in civil contempt for failing to file the sworn reports and that he should be held in criminal contempt for perjury and making the $100,000 transfer if it violated the terms of the injunction. The Mitte Foundation also argued that Petitioner was "entitled to an opportunity to have another day in court on that and present any defenses he has to that criminal contempt."

---

[1] This factual background is summarized from the Texas appellate court's opinion in *In re Paul*, No. 03-23-00160-CV, 2023 WL 2718454, at *1-5 (Tex. App.--Austin, Mar. 31, 2023, orig. proceeding [mand. denied]). (ECF No. 1-6 at 455-470.)

> The Mitte Foundation then drafted another motion to show cause, arguing that
>
> > [a]fter blatantly and without excuse disobeying the Court's injunction until days before the show-cause hearing, Mr. Paul provided the court with false reports and then compounded the issue by lying under oath. Mr. Paul's false reports violate the Injunction, which Ordered him to disclose each transfer, conveyance or dissipation of assets in excess of $25,000, and his false testimony to the Court obstructed its ability to monitor compliance with its orders. If the Court finds that Mr. Paul made false statements in either his sworn reports or his testimony at the November 9, 2022 hearing, Plaintiff requests that after notice and hearing he be found in criminal contempt and confined to the Travis County jail for a period deemed appropriate by the Court.

The trial court granted the Mitte Foundation's motion, signing another show-cause order on November 9, 2022. The order, which was drafted by the Mitte Foundation and revised in consultation with Petitioner's counsel, ordered Petitioner to appear in person on November 17, 2022, "to show cause why he should not be held in contempt of court for disobedience of the injunction and making false testimony under oath to the Court."

At the November 17, 2022 hearing, Paul acknowledged making the $100,000 transfer but claimed he did not know until the November 9, 2022 hearing that this transfer violated the parties' injunction. Once testimony concluded, and the parties made their arguments, the trial court ended the hearing by taking the matter under advisement. In an email sent on March 3, 2023, the trial court alerted the parties to its decision, which found Petitioner to be in contempt of court and ordered him confined to the Travis County Jail for a period of ten days starting March 15, 2023. The email requested the Mitte Foundation draft an order for the court's signature by the end of the week. On March 10, 2023, the order codifying these terms was filed.

Petitioner then filed an emergency petition for habeas corpus and mandamus relief with the state court of appeals. The state court granted a stay of the contempt order while it decided the petition. On March 31, 2023, the court of appeals modified the contempt order to eliminate two

grounds for criminal contempt, but otherwise denied the petition. *In re Paul*, No. 03-23-00160-CV, 2023 WL 2718454 (Tex. App.—Austin, March 31, 2023).

Petitioner then filed an emergency petition for writs of habeas corpus and mandamus with the Texas Supreme Court. He argued, among other things, that the trial court imposed sentences for his criminal contempt convictions without conducting a sentencing hearing, thereby denying Petitioner his rights to the assistance of counsel, to be present in court, and to allocution. On March 24, 2024, the Texas Supreme Court denied Petitioner's petition for writ of mandamus; however, four justices dissented, arguing the court should have accepted review of one of Petitioner's other claims: that allowing a judgment creditor (the Mitte Foundation) to prosecute its debtor (Petitioner) for acts of criminal contempt violated due process. *In re Paul*, No. 23-0253, 2024 WL 1122520 (Tex. Mar. 24, 2024).

On March 19, 2024, the Texas Supreme Court granted Petitioner's motion for an emergency stay pending his petition for writ of certiorari to the United States Supreme Court. Petitioner thereafter filed the petition, posing two questions before the Supreme Court: (1) whether a criminal-contempt prosecution by an interested party violates the Due Process Clause and (2) whether sentencing a criminal defendant to jail via email, in absentia and without the opportunity to address the judge, violates the Due Process Clause or the Sixth Amendment. On October 15, 2024, the Supreme Court denied Petitioner's petition. *Paul v. Roy F. Found.*, No. 23-1313, 2024 WL 4486365 (Oct. 15, 2024).

On October 22, 2024, Petitioner filed his federal petition for habeas corpus relief and his emergency application for a stay. (ECF Nos. 1, 3.) In his habeas corpus petition, Petitioner argues his jail sentence for criminal contempt is unconstitutional because the trial court did not conduct a separate sentencing hearing, which denied Petitioner his constitutional rights to the assistance of

counsel, to physical presence, and to present mitigation. (ECF No. 1.) In his emergency application for stay, Petitioner argues the Court should stay the trial court's criminal contempt order pending the resolution of his federal habeas petition because the legal issue presented in his habeas petition is likely to succeed on the merits, he will be irreparably harmed without a stay, and a stay is in the public interest. (ECF No. 3.) In Respondent's response to the emergency application, they argue Petitioner's habeas petition is not likely to succeed on the merits, and that a stay is not in the public interest. (ECF No. 8). In his reply, Petitioner essentially restates his arguments from his original emergency motion.[2] (ECF No. 17.)

## II. Analysis

First, the Court must determine if it has jurisdiction over Petitioner's emergency application. Petitioner asks the Court to stay his criminal contempt sentence while it adjudicates his federal habeas corpus petition. Under 28 U.S.C. § 2251(a)(1), a federal court "before whom a habeas corpus proceeding is pending, may, before final judgment or after final judgment of discharge, or pending appeal, stay any proceeding against the person detained in any State court or by or under the authority of any State for any matter involved in the habeas corpus proceeding." Petitioner argues he is in custody for purposes of 28 U.S.C. §§ 2251(a)(1) and 2254[3] because the execution of his criminal contempt sentence is imminent[4] and he has thus far avoided serving his sentence through a grant of several stays by the Texas state courts. The Court agrees that Petitioner is in custody for purposes of both §§ 2251(a)(1) and 2254. *See Hensley v. Municipal Court*, 411

---

[2] In his reply, Petitioner alludes to his Fifth Amendment rights being violated (ECF No. 17 at 3); however, this claim is not in his federal habeas petition and therefore is not considered in this Order.
[3] Petitioner cites to both 28 U.S.C. §§ 2241 and 2254 in his federal petition. Section 2241 gives the federal courts general power to adjudicate habeas corpus petitions, whereas § 2254(a) specifically authorizes federal courts to adjudicate habeas petitions on "behalf of a person in custody pursuant to the judgment of a State court." As Petitioner admits in his reply, he is contesting his "state court criminal conviction." (ECF No. 17 at 1-2.) Accordingly, the Court considers his habeas petition as one filed pursuant to § 2254.
[4] On October 25, 2024, the Texas Supreme Court lifted its stay of Petitioner's criminal contempt sentence while he was pursuing a writ of certiorari with the United States Supreme Court. *In re Paul*, No. 23-0253 (Tex. Oct. 25, 2024).

U.S. 345, 345, 351(1973) (holding that person released on his own recognizance pending execution of his sentence was in custody for purposes of § 2254). Because Petitioner is in custody for purposes of his federal habeas petition, the Court has jurisdiction over Petitioner's emergency application.

In deciding whether to issue a stay of a state-court proceeding, a federal court must consider the following four factors: (1) whether the stay applicant has made a strong showing he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other party interested in the proceeding; and (4) where the public interest lies. *See Nken v. Holder*, 556 U.S. 418, 425-26 (2009). The first two factors—success on the merits and irreparable injury—are the most critical. *Id.* at 434. As explained below, together, these factors support denying Petitioner's emergency petition.

*a. Likelihood of Success on the Merits*

Petitioner fails to meet his burden under the first *Nken* factor, which requires him to make a strong showing that he is likely to succeed on the merits of his federal habeas corpus petition. "It is not enough that the chance of success on the merits be better than negligible … more than the mere possibility of relief is required." *Id.* at 434 (citations and quotations omitted).

In his habeas petition, Petitioner argues his state criminal contempt sentence violates the Sixth Amendment and the Due Process Clause because, when the trial court notified the parties of its decision and sentenced Petitioner, he did not have the assistance of counsel, he was not physically present, and he did not have the right to allocute or present mitigating evidence. Respondent argues (1) this is a mischaracterization of the process Petitioner received, (2) Petitioner has failed to identify any Texas state law suggesting he has a right to a separate sentencing hearing

when a court imposes a jail sentence for criminal contempt, and (3) Petitioner's reliance on *Taylor v. Hayes*, 418 U.S. 488 (1974) is unavailing. The Court agrees with Respondent.

Because Petitioner alleges the procedures employed for his contempt sentencing violate the Constitution, the Court first briefly reviews the law of contempt in Texas. Under Texas state law, contempt is defined as "disobedience to or disrespect of a court by acting in opposition to its authority." *In re Paul*, 2023 WL 2718454 at *6 (quoting *In re Reece*, 341 S.W.3d 360, 364 (Tex. 2001) (orig. proceeding)). Texas identifies two forms of contempt: direct contempt, which occurs in the presence of the court, and constructive contempt, which occurs outside the court's presence. *Id.* For direct contempt, the court has direct knowledge of the contemptuous conduct, having observed it, and such conduct "obstructs or tends to obstruct the proper functioning of the court and the administration of justice." *Id.* (citing *In re Hesse*, 552 S.W.3d 893, 897 (Tex. App.—Amarillo 2018, orig. proceeding)). Constructive contempt, on the other hand, occurs outside the presence of the court and requires testimony or the production of evidence to establish the contemptuous act. *Id.*

These distinctions are relevant because a person guilty of direct contempt "is not entitled to the same procedural safeguards as someone accused of constructive contempt." *Id.* For persons accused of constructive contempt, "due process requires that the accused be advised of the nature and occurrence of the alleged contemptuous act and have a reasonable opportunity to address those charges by way of defense or explanation, including the right to the assistance of counsel." *Id.* Contempt is further classified into civil and criminal contempt—civil contempt is remedial and coercive in nature, while criminal contempt is punitive. *Id* (citing *Reece*, 341 S.W.3d at 365.) Because criminal contempt "is a crime in the ordinary sense," *id.* (quoting *Bloom v. Illinois*, 391 U.S. 194, 201 (1968)), those accused of criminal contempt are afforded many constitutional rights

including notice, *id.* "A contempt order rendered without such adequate notification is void." *Id.* (quoting *In re Davis*, 205 S.W.3d 326, 330 (Tex. App.—Houston [14th Dis.] 2010, orig. proceeding)).

As Respondent points out, Petitioner had notice of the charges against him via the trial court's two show-cause orders. In the October 4, 2022 show-cause order, the court ordered Petitioner to show cause why he should not be held in contempt of court based on the Mitte Foundation's allegation he had failed to file the reports required by the June 10, 2022 injunction. The trial court also scheduled a hearing on the matter for November 9, 2022. At the November 9 hearing, Petitioner testified that, while he had failed to file the reports, he had not violated the injunction by conveying or dissipating any assets in excess of $25,000. The Mitte Foundation provided evidence suggesting Petitioner had violated the injunction by paying $100,000 to a professional basketball player on June 22, 2022. In consultation with Petitioner's counsel, the Mitte Foundation drafted another show-cause order, which ordered Petitioner to appear again on November 17, 2022, to show cause why he should not be "held in contempt of Court for disobedience of the Injunction and making false testimony under oath to the Court." (*Id.* at 201.) At the November 17 hearing, Petitioner was represented by counsel and testified on his own behalf. The court took the matter under advisement and then alerted the parties to its decision in its March 3, 2023 email.

Under Texas state law, constructive contempt adjudications require notice, a hearing, and the opportunity to obtain counsel. *Ex parte Krupps*, 712 S.W.2d 144, 147 (Tex. Crim. App. 1986). The trial court's October 4 show-cause order notified Petitioner of the constructive contempt allegation. At the November 9 hearing, Petitioner was represented by counsel. It was at this hearing that the alleged perjury occurred, thus resulting in another show-cause order and the November 17

hearing where Petitioner was again represented by counsel. As a result, the trial court's procedures in finding Petitioner in criminal contempt of court—and sentencing him with criminal sanctions—complied with state law.

In his federal habeas petition, Petitioner argues the state procedures are inadequate and violate his constitutional rights under the Fourteenth Amendment's Due Process Clause and the Sixth Amendment. He argues these Amendments require a separate sentencing hearing, where he is physically present with counsel and given an opportunity to allocute. In support of his argument, he cites *Taylor v. Hayes*, 418 U.S. 488, 499 (1974) for the proposition that a state court violates due process when the court does not allow the alleged contemnor to "present matter in mitigation or otherwise attempt to make amends with the court." This, Petitioner argues, shows that the trial court erred by not having a separate sentencing hearing.

The Court disagrees. First, the facts of *Taylor* do not support an analogy with Petitioner's case. In *Taylor*, the petitioner was a defense attorney in Kentucky who was representing a Black man accused of murdering a police officer. During the lengthy trial, the trial judge—who was the respondent in the case—told the petitioner he was in contempt of court on nine separate occasions. At the end of the trial, the trial judge sentenced the petitioner to a total of almost four-and-a-half years imprisonment (later reduced to six months) based on the nine contempt charges; when the petitioner asked to respond to the judge's charges, the judge replied "you're not responding to me on anything" and indicated his willingness to gag the petitioner if he tried to defend himself. This factual scenario differs from Petitioner's who had two hearings, was represented by counsel at both hearings, and testified on his own behalf at both hearings, before the trial court sentenced him to jail for criminal contempt.

Second, and importantly, to be granted relief on his habeas corpus petition, Petitioner has to overcome the deference federal courts grant state court decisions pursuant to the Antiterrorism and Effective Death Penalty Act (ADEPA). Under the AEDPA, a petitioner may not obtain federal habeas corpus relief on any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d); *Brown v. Payton*, 544 U.S. 133, 141 (2005). This demanding standard stops just short of imposing a complete bar on federal court re-litigation of claims already rejected in state proceedings. *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). As a result, to obtain federal habeas relief on a claim previously adjudicated on the merits in state court, a petitioner must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103.

The Texas Third Court of Appeals and the Texas Supreme Court both considered and rejected Petitioner's claim that he was entitled to a separate sentencing hearing. In order for this Court to grant his emergency application, Petitioner has to show that fairminded jurists could disagree on the correctness of the state courts' decisions. Petitioner's appeal to a factually

disanalogous case does not meet this burden. As a result, the Court concludes Petitioner has not shown he would likely succeed on the merits of his federal habeas petition.

   *b. Irreparable Injury*

The next factor the Court considers when deciding a motion for stay is whether irreparable injury would result absent a stay. "A stay is not a matter of right even if irreparable injury might otherwise result." *Nken*, 556 U.S. at 433. The Court identifies Petitioner's injury as imprisonment. Respondent argues that, based on Fifth Circuit precedent, "an injury is irreparable only if it cannot be undone through monetary remedies." *Burgess v. Fed. Deposit Ins. Corp.*, 871 F.3d 297, 304 (5th Cir. 2017) (quotation and citation omitted).

Some individuals, whose convictions have been reversed, expunged or otherwise declared invalid, are able to sue for monetary damages based on their allegedly unconstitutional convictions pursuant to 42 U.S.C. § 1983. However, it is unclear to the Court that those monetary remedies are sufficient to undo the injury under this *Nken* factor. Accordingly, the Court concludes that imprisonment based on an allegedly unconstitutional sentence would result in irreparable injury.

   *c. Other Interested Parties and the Public Interest*

The final two factors the Court considers are whether the issuance of a stay will substantially injure the other parties interested in the proceeding and where the public interest lies. Neither party has addressed whether the issuance of a stay will substantially injure the other parties interested in the proceedings. Because the party requesting a stay bears the burden of showing a stay is justified, *Nken*, 566 U.S. at 433-34, the Court can only conclude that Petitioner has not met his burden with regard to this factor.[5]

---

[5] The Court can imagine that at least two of the interested parties—the trial court and the Mitte Foundation—would be injured by the issuance of a stay. The trial court has a substantial interest in ensuring its orders are followed and that Petitioner no longer testifies falsely. The Mitte Foundation has an interest in ensuring Petitioner pays the judgment against him and understands that not complying with court orders will not go unpunished.

With regard to where the public interest lies, Petitioner argues the public interest lies in what he says he was denied: a separate sentencing hearing where the contemnor is present, with counsel, and fully participating. Respondent argues that a stay does not serve the public, but only Petitioner. Rather, the public interest lies in the enforcement of contempt orders that deter litigants from providing false testimony before the trial court.

The Court agrees with Respondent. Petitioner's request for a separate sentencing hearing for criminal contempt does not seem to advance the goal of criminal contempt, i.e., to deter litigants from intentionally obstructing the administration of justice. While the Court agrees with Petitioner that the public has an interest in judicial proceedings following due process, Petitioner has failed to show that an additional sentencing hearing, occurring after a contempt hearing, is required by due process. He provides no case law on point and makes no persuasive argument. As a result, the Court concludes that the public interest lies in not granting Petitioner a stay.

Three out of the four *Nken* factors disfavor granting a stay: Petitioner has failed to show he would likely succeed on the merits of his federal habeas petition, he did not address whether the issuance of stay would substantially injure other parties interested in this proceeding, and the public interest lies not with creating more procedure for contemnors but in ensuring that courts are unobstructed in their administration of justice. As a result, the Court denies Petitioner's emergency application for stay.

It is therefore **ORDERED** that Petitioner Natin Paul's Emergency Application for a Stay of the State Trial Court's Criminal Contempt Order (ECF No. 3) is **DENIED**.

SIGNED this 7th day of November, 2024.

_____
DAVID A. EZRA
SENIOR UNITED STATES DISTRICT JUDGE